IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| MILO WILLIAMS, PRO SE, <br> also known as MILO CRADALE WILLIAMS, <br> also known as JON THOMPSON, <br> also known as CARLOS GOLDEN, <br> TDCJ-CID No. 1223229, <br> NMDC No. 41908, <br> Federal No. 27366-177, <br><br> Plaintiff, <br><br> v. <br><br> GERALD E. BEDISON, Chaplain, ET AL. <br><br> Defendants. | § § § § § § § § § § § § § § § § | <br><br><br><br><br><br><br><br><br><br> 2:16-CV-0020 |

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT BEDISON'S MOTION FOR SUMMARY JUDGMENT

Before the Court for consideration is the Defendant BEDISON'S Motion for Summary Judgment filed July 16, 2016 [D.E. 32]. On August 4, 2016, plaintiff filed an objection to the motion for summary judgment [D.E. 35]. Both parties then submitted additional replies. [D.E. 37, 38]. The Court has reviewed all the summary judgment evidence and arguments of the parties.

### OVERVIEW OF THE CASE

On September 14, 2015, plaintiff officially registered his religious affiliation with TDCJ as "Moorish Science Temple of America" pursuant TDCJ's registry policy. *See* MSJ Exhibit D, 002. According to competent summary judgment evidence, MSTA has 168 statewide members in TDCJ and 12-13 members at the Clements Unit as of February 2016. *See* MSJ Exhibit I, 002; MSJ Exhibit J, 002. The MSTA is classified by Chaplaincy Headquarters and TDCJ as a sect of

the "Muslim" religion and it is placed under the Muslim/Islam umbrella. *See* MSJ Exhibit H, 005. There are a vast array of religious faith preferences registered with TDCJ statewide. As of the filing of the motion for summary judgment, records indicate that 312 different faith preferences exist statewide in TDCJ and that 92 separate faith preferences have recognized followers at the Clements Unit. *See* MSJ Exhibit C, 001. According to TDCJ records, discounting the three most numerous faiths, 89 religious faith groups at the Clements Unit remain, and each of those groups have an average of eighteen members. *See* MSJ Exhibit C, 002. TDCJ recognizes that offenders can change their faith preference designation once annually and so these designations are fluid and changing. *Id.*

The current staffing rate for chaplains and other personnel at the Clements Unit of TDCJ has consistently been over 90% in recent years. *See* MSJ Exhibit L. TDCJ policy regarding requests for religious services requires TDCJ to consider availability of chaplains and resources, approved volunteers, and other factors when determining whether to offer a particular sect of a religion a separate meeting time. *See* MSJ Exhibit E, 006. In general, TDCJ has "primary religious programming" which groups religious ceremonies by the commonalities of beliefs in order to provide as many sects as possible with the opportunity to worship. *See* MSJ Exhibit E.

Plaintiff alleges that, on September 16, 2015, he wrote to the Chaplain's Department requesting a separate religious service for the Moorish Science Temple of America (MSTA), arguing that it was different from Islam, and defendant BEDISON responded that the MSTA falls under the umbrella of Islam and advised plaintiff to attend the Muslim services already provided. Plaintiff states he filed a grievance against BEDISON based on this response to his request for separate religious services. TDCJ responded to his step one grievance on October 8, 2015, directing plaintiff that he was also eligible to request Jumah and Taleem services on

Friday, presumably in addition to the one hour Muslim service already provided. Plaintiff's Step 2 grievance, answered by the Director of Chaplaincy Operations, was also unsuccessful in securing a separate religious service for MSTA members, and directed plaintiff to submit an additional I-60 request if needed. In his amended complaint, plaintiff indicates that he has been denied the right to wear a fez during religious ceremonies and that the Jumah and Taleem services are inadequate to address the needs of MSTA members and allow for separate fellowship on Fridays.

The requirements for an offender to request a separate religious program are provided in TDCJ rules. According to regulation, offenders submit an I-60 request, the chaplain of the unit reviews that request and interviews the offender, and *for religious practices that have not been previously addressed*, the chaplain should complete an HQ-150 form and submit that form to Chaplaincy Headquarters. *See* MSJ Exhibit E, 007. The competent summary judgment evidence indicates that MSTA has been determined to fall under the Muslim/Islam umbrella by TDCJ and Chaplaincy guidelines prior to the I-60 submitted by plaintiff. However, an issue in this case is present regarding whether TDCJ considered plaintiff's request for individual services at the Clements Unit in that it is unclear whether the *Clements Unit* has specifically considered whether sufficient numbers of MSTA worshipers exist to merit consideration of separate services at the Clements Unit for MSTA members. The Court discusses this issue below.

## CLAIMS AND REQUESTS FOR RELIEF

Plaintiff MILO WILLIAMS, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division, filed suit pursuant to Title 42, United States Code, section 1983 complaining against defendant BEDISON and was granted permission to proceed in forma pauperis. Plaintiff also filed suit against defendant

BEACH, but these claims were dismissed with prejudice as frivolous on March 1, 2016. Although plaintiff did not name the State of Texas or the Texas Department of Criminal Justice as defendants to his suit, plaintiff's RLUIPA claims are considered as they relate to TDCJ and Clements Unit policies and applications of those policies in general to determine if injunctive relief is appropriate.

Plaintiff complains BEDISON denied him the right to practice his religion and has promoted another religion. Additionally, plaintiff states BEDISON failed to follow TDCJ procedures in considering his request for a separate service for his religion. Plaintiff has also asserted that he is not allowed to wear his religious head covering during the religious services he does attend. Plaintiff alleges his rights were violated under the First Amendment Free Exercise Clause, under the Religious Land Use and Institutionalized Persons Act (RLUIPA), and under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff requests declaratory and injunctive relief stating that the Moorish Science Temple of America (MSTA) is a separate religion from Al-Islam and "can receive a religious service like other religions." Plaintiff also seeks an award of costs of suit and $25,000.00 in punitive damages.

## STANDARD OF REVIEW

Summary judgment may be granted if there is "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2510. To avoid summary judgment, the nonmoving

party must submit admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case. Unsubstantiated assertions of an actual dispute will not suffice. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). An opposing party cannot establish a genuine issue of material fact based on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

BEDISON claims plaintiff has failed to exhaust his administrative remedies in regards to wearing a fez during religious ceremonies and any other claims against TDCJ for failing to provide him the opportunity to meet with MSTA members outside of the one hour services offered to Muslims on Fridays. A plaintiff's complaint is subject to dismissal for failure to exhaust his administrative remedies under 42 U.S.C. § 1997e(a), as amended in 1996 by the Prisoner Litigation Reform Act (PLRA), if he failed to pursue all administrative remedies prior to bringing a civil action challenging prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12, (2002) (exhaustion requirement "applies to all inmate suits about prison life, whether [those suits] involve general circumstances or particular episodes, and whether [those suits] allege excessive force or some other wrong"); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958, (2001) (mandatory exhaustion requirement must be strictly observed "regardless of the relief offered through administrative procedures").

Defendant BEDISON asserts the defense of qualified immunity in his motion for summary judgment. Qualified immunity is an affirmative defense which protects public officials from civil liability while performing discretionary functions when such acts or omissions were

objectively reasonable in light of clearly established law. *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.); *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). District courts must administer a two-part test in determining whether defendants are entitled to qualified immunity. The first prong of the test is a determination by the court, taking all allegations by plaintiff as true, of whether or not plaintiff has asserted the violation of a clearly established constitutional right. Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993). In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

The Court notes that it is unnecessary to reach the issue of qualified immunity for violations of RLUIPA. The Court will consider qualified immunity claims in regards to liability for the constitutional violations alleged in this case. The RLUIPA statute does not create liability

for the actions of individuals who are sued in their individual capacities. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009).

Defendant also asserts the defense of immunity under the eleventh amendment. The principle of state-sovereign immunity generally precludes actions against state officers in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663-69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The exception to this rule is contained in the *Ex parte Young* doctrine. Under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Insomuch as the plaintiff is suing for monetary relief against BEDISON in his official capacity, his suit should be dismissed based on eleventh amendment immunity.

## THE LAW AND ANALYSIS

**Plaintiff Claim against Defendant BEDISON for failing to follow TDCJ Procedure**

As to plaintiff's claim against defendant BEDISON for failing to follow TDCJ procedure by not submitting a form HQ-150 to the Chaplaincy Headquarters, the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. *See, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir.), cert. denied, 489 U.S. 1085, 109 S.Ct. 1545, 103 L.Ed.2d 849 (1989); *Baker v. McCollan*, 433 U.S. 137, 146-47, 99 S.Ct. 2689, 2695-2696, 61 L.Ed.2d 433 (1979). Defendant BEDISON submits competent summary judgment evidence that he is no longer assigned to the Clements Unit of TDCJ as of February 1, 2016. *See* MSJ Exhibit A, 001. Insofar as plaintiff seeks injunctive relief against defendant BEDISON to submit a form HQ-150 to Chaplaincy Headquarters to conduct an inquiry into the feasibility of providing separate

services to MSTA members at the Clements Unit, BEDISON cannot provide this relief. Insofar as plaintiff argues that TDCJ has violated RLUIPA by failing to conduct an inquiry at the Clements Unit for MSTA members, that claim is discussed below.

Plaintiff's claim against defendant BEDISON for failing to follow TDCJ procedures, if in fact he did fail to follow these procedures, does not state a claim unless he can prove that TDCJ, or by extension defendant BEDISON, otherwise violated RLUIPA, or any constitutional construct. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

**First Amendment Free Exercise Claim against Defendant BEDISON**

Plaintiff's alleges a First Amendment Free Exercise claim, a Fourteenth Amendment Equal Protection claim, and a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) against defendant BEDISON.

Inmates do not forfeit all constitutional rights upon entering the prison system. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Furthermore, the Constitution does not require that every religious sect or group within a prison, regardless of size, be provided identical facilities or personnel. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 92 S.Ct. 1079, 1082 n.2, 31 L.Ed.2d 263 (1972)("[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.").

Plaintiff alleges there are sufficient members of MSTA (he states there are 15 members at the Clements Unit where he is currently housed but competent summary judgment evidence

shows 12-13 members) to qualify for separate worship services and that MSTA meets all other requirements for a religious service separate from the generic Muslim services provided by TDCJ. Plaintiff states he informed prison officials of such and specifically states TDCJ Wynn Unit provides for separate services to MSTA members. Plaintiff does not request either in this lawsuit or otherwise a transfer to the Wynn Unit. In his Amended Complaint, plaintiff states that he is not allowed to wear his fez during religious ceremonies and that MSTA members are not provided sufficient time during the one hour generalized service for Muslims on Fridays to meet individually and separately. Plaintiff does not indicate he is not allowed to possess his MSTA specific holy book, religious paraphernalia, or other items relevant to his faith. Plaintiff does not allege that outside of the Friday ceremony for general Muslim services he is denied from meeting, studying, or praying with other MSTA members or volunteers.

The facts alleged by plaintiff do not state a claim under the First Amendment.

**Fourteenth Amendment Equal Protection claim against Defendant BEDISON**

With respect to any possible Fourteenth Amendment Equal Protection claim, a successful plaintiff must allege facts to show "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) (quoting *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992)). *Adkins* involved several claims, including a claim that the Yahweh Evangelical Assembly was being discriminated against by prison authorities, who were alleged to favor adherents of other religions. The *Adkins* court held the Fourteenth Amendment does not demand that all religious groups in a prison, however few in number they are, must have identical facilities or personnel. *Id.*

The plaintiff's amended complaint continues to fail to articulate a claim based on equal protection. Plaintiff has not asserted or shown that BEDISON or officials at the TDCJ unit have

2:16-cv-0020.Williams.R&R.religion: 4

specifically discriminated against MSTA in not providing separate services in comparison with any of the other 89 small faith based groups. Competent summary judgment evidence shows that TDCJ groups these smaller groups into 10 "major" religious umbrellas based on resources.

BEDISON has asserted the defense of qualified immunity as to the plaintiff's First and Fourteenth Amendment claims. Assuming plaintiff can establish the first prong of the qualified immunity test that he has a constitutional right to practice his religion in TDCJ without being substantially burdened by their rules and regulations, the Court must review TDCJ's and plaintiff's competent summary judgment evidence to establish whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law.

The policies and procedures of TDCJ in grouping MSTA under the generic Muslim umbrella for purposes of providing specific religious services is objectively reasonable based on the summary judgment evidence. Although plaintiff articulates that BEDISON may not have sent an HQ-150 to Chaplaincy Headquarters regarding plaintiff's I-60 request for separate services, it appears that TDCJ had already established an articulated policy regarding MSTA members being grouped under the Muslim umbrella. It is also apparent from the summary judgment evidence that TDCJ has shown willingness to provide MSTA members with accommodations if the numbers at a particular unit warrant such accommodations and the staffing at those units makes those accommodations possible (or if an approved outside volunteer can be found to allow these services to take place). Although allowing an HQ-150 regarding MSTA services at the Clements Unit to be sent to the Chaplaincy Headquarters would more aptly establish that TDCJ, in following their own procedures, cannot accommodate separate MSTA services at this time at the Clements Unit, the summary judgment evidence is sufficient to rule out a fact issue on this question. As discussed above, TDCJ has submitted evidence that the number of established faith

groups at the Clements Unit of TDCJ is 92 and that statewide there are over 300 such groups. Staff simply cannot provide for individual religious services for each subdivision or faith group. There is evidence that over 89 groups exist with an average of 18 members at the Clements Unit, and TDCJ has grouped these faiths into 10 "major" groups called "primary religious programming." TDCJ has enacted policies that consider contemporaneous clearly-established law. The Constitution does not require that every religious sect or group within a prison, regardless of size, be provided identical facilities or personnel. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 92 S.Ct. 1079, 1082 n.2, 31 L.Ed.2d 263 (1972), and TDCJ has policies in effect that recognize the fluid nature of religious beliefs among inmates and allow for provisions to adjust services as needs arise. Plaintiff is allowed to attend generic Muslim religious services and generic prayer services, and plaintiff has not articulated discrimination against MSTA members specifically by TDCJ. Rather, plaintiff's request would open the door for every single one of the 89 religious groups to be provided separate services regardless of staff or room or time availability. The Court finds this is sufficient to determine that TDCJ acted with objective reasonableness toward MSTA members at the Clements Unit and plaintiff individually.

**RLUIPA claims against Defendant BEDISON**

Lastly, plaintiff does not allege he or other members of MSTA are completely prevented from conducting formal or informal group study, teaching, or sermon-giving. Rather, plaintiff alleges that neither the generic Muslim religious service provided on Friday, nor the alternative prayer groups provided for Muslims on Friday, allows time to separately meet with MSTA members. The fact that he cannot do these things at the generic Muslim religious services held for all Muslim prisoners of various Muslim sects does not demonstrate plaintiff has suffered a

substantial burden on his free exercise of religion. *See Jones v. Shabazz,* 352 F. App'x 910, 914 (5th Cir.2009) (citing *Adkins v. Kaspar,* 393 F.3d 559, 569-70 (5th Cir.2004)).

Defendant BEDISON asserts that plaintiff failed to exhaust his administrative remedies in regards to wearing a fez during religious services or other specific allegations regarding specifics of MSTA faith based worship. The Court finds that these claims are barred by the exhaustion requirement because there is no evidence in the record that plaintiff requested to wear a fez or be provided with other specific MSTA accommodations and was denied these things by TDCJ. The plaintiff, in his grievances, solely challenges denial of a separate formal religious service on Friday.

Although the sole remaining defendant of plaintiff's suit is defendant BEDISON, the Court also considers whether TDCJ's policies and procedures, and the execution of those policies, create a substantial burden on the plaintiff's free exercise of religion pursuant to RLUIPA. This analysis is important given that defendant BEDISON is no longer stationed at the Clements Unit of TDCJ.

Exhibits attached to defendants' motion for summary judgment provide the Court with the policies and procedures regarding religious faith groupings by TDCJ. TDCJ policy regarding requests for religious services requires TDCJ to consider availability of chaplains and resources, approved volunteers, and other factors when determining whether to offer a particular sect of a religion a separate meeting time. *See* MSJ Exhibit E, 006. In general, TDCJ has "primary religious programming" which groups religious ceremonies by the commonalities of beliefs in order to provide as many sects as possible with the opportunity to worship. *See* MSJ Exhibit E.

According to these exhibits, MSTA has 168 statewide members in TDCJ and 12-13 members at the Clements Unit as of February 2016. *See* MSJ Exhibit I, 002; MSJ Exhibit J, 002.

The MSTA is classified by Chaplaincy Headquarters and TDCJ as a sect of the "Muslim" religion and it is placed under the Muslim/Islam umbrella. *See* MSJ Exhibit H, 005. There are a vast array of religious faith preferences registered with TDCJ statewide. As of the filing of the motion for summary judgment, records indicate that 312 different faith preferences exist statewide in TDCJ and that 92 separate faith preferences have recognized followers at the Clements Unit. *See* MSJ Exhibit C, 001. According to TDCJ records, discounting the three most numerous faiths, 89 religious faith groups at the Clements Unit remain, and each of those groups have an average of <u>eighteen members</u>. *See* MSJ Exhibit C, 002. TDCJ recognizes that offenders can change their faith preference designation once annually and so these designations are fluid and changing. *Id.*

TDCJ's policy of grouping religious faiths does not violate clearly established contemporaneous law. The Supreme Court long held that every religious group within a facility is not entitled to be provided identical facilities or personnel, regardless of size. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 92 S.Ct. 1079, 1082 n.2, 31 L.Ed.2d 263 (1972). The Fifth Circuit has determined generic services for major faith based groupings by TDCJ does not presumptively violate RLUIPA. *See Jones v. Shabazz*, 352 F. App'x 910, 915 (5th Cir.2009) (unpublished). A prison regulation is reasonable and permissible if it satisfies the four factors established in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987): (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to

the challenged regulation or action. In light of Fifth Circuit analysis determining that the grouping of religious sects into "major religions," specifically under the Muslim umbrella, does not constitute a presumptive violation of RLUIPA, and after the Court has reviewed TDCJ's policies and statistics, the Court has determined that TDCJ's treatment of plaintiff in this case does not violate RLUIPA. TDCJ has satisfied the four factor test of *Turner*. TDCJ has shown it is unable to accommodate all 92 religious faith groups with individual worship services. TDCJ allows plaintiff to attend group Muslim services, two separate Islamic prayer groups, or to request a lay in to other groups. There would be a substantial impact on prison resources if plaintiff's request was granted, as it opens the door for at least 88 other groups to request such relief. There are no obvious, easy alternatives to major faith based grouping. Also, there is an alternative means to exercising the right to meet with MSTA members individually. It is not easy, but plaintiff can request an outside volunteer be approved to lead services. Plaintiff has not articulated, or exhausted his administrative remedies, as to the denial of the right to practice any other aspect of his religion, with the exception of not having a separate religious service on Fridays provided to MSTA.

Plaintiff appears to be suing BEDISON in both his official and his individual capacity. In regards to his requests for monetary relief against defendant BEDISON, the Court finds that BEDISON is entitled to Eleventh Amendment immunity against monetary damages in regards to a suit against him in his official capacity, and the Court finds that RLUIPA does not provide for monetary damages against BEDISON for a suit in his individual capacity.

Plaintiff has not stated a claim under RLUIPA. The Court notes that any request by plaintiff to transfer to another unit with an established MSTA separate service should be

considered by TDCJ, but a denial of transfer has not been alleged by the plaintiff and as such is not presently before the Court.

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that BEDISON'S Motion for Summary Judgment be GRANTED, and the Civil Rights Complaint filed pursuant to Title 42, United States Code, section 1983, by plaintiff MILO WILLIAMS be DISMISSED WITH PREJUDICE.

### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 3rd day of March, 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).